IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ALFRED VALENTINO GARCIA,

    Plaintiff,

v.                                                     Case No. 6:09-CV-01103 WDS/LFG

STATE OF NEW MEXICO, GOVERNOR BILL
RICHARDSON, NEW MEXICO CORRECTIONS
DEPARTMENT, JOE WILLIAMS, and
unidentified Corrections Department personnel and
contractors,

    Defendants.

**DEFENDANTS STATE OF NEW MEXICO AND GOVERNOR BILL RICHARDSON'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

        The State of New Mexico and Bill Richardson, Governor of the State of New Mexico (the "Defendants"), by and through their counsel of record, Long, Pound & Komer, P.A., move the Court for an order dismissing Plaintiff Alfred Valentino Garcia's *pro se* complaint insofar as it seeks to state claims against them. In support of this motion, Defendants state as follows:

        Garcia, an inmate in a state correctional facility, has sued the State of New Mexico, the Governor of the State of New Mexico, the Department of Corrections, and the Secretary of Corrections along with other "unidentified corrections employees and contractors." While the basis of his complaint is unclear, it appears that he seeks over $303,750.00 based on the alleged confiscation of $250.00 worth of property.

        Dismissal of the claims against the State of New Mexico and Governor Richardson is proper here because: (1) Garcia has not included, and could not include, good faith factual allegations that would be sufficient to state a constitutional claim against the State generally or the Governor under the United States Supreme Court's decision in *Ashcroft v. Iqbal*, 129 S. Ct.

1937 (2009); (2) the Governor is entitled to qualified immunity from any constitutional claim Garcia might be trying to assert; and (3) Garcia's state tort claims are not supported with sufficient allegations to pull those claims outside the immunity provided by the New Mexico Tort Claims Act and state a claim upon which relief could be granted.

## ARGUMENT

Through its opinions in *Bell Atlantic Corporation v. Twombly,* 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 2009 WL 1361536, at *17 (2009), the United States Supreme Court recently has clarified the standard that governs motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).  In *Twombly*, the Court made clear that allegations of misconduct must "possess enough heft" to push the claims over the threshold of "plausibility" before they can survive dismissal.  *Twombly*, 550 U.S. at 557.  Allegations do not cross this threshold where the Court can readily discern "more likely" or "obvious alternative explanations" for the defendant's course of conduct.  *Id*. at 567.  Moreover, a plaintiff must establish that his claims are facially plausible by providing more than "threadbare recitals of a cause of action's elements" or a "framework" of legal conclusions unsupported by specific factual allegations to meet this standard.  *Iqbal*, 129 S. Ct. at 1949–50.  Garcia's complaint falls short of these standards, and dismissal of all claims against the Governor and the State of New Mexico therefore is appropriate.

> **A.** **The complaint does not even approach the specificity necessary to state a constitutional claim against the Governor or the State of New Mexico under *Iqbal*.**

The only allegation Garcia includes in his complaint that mentions the Governor at all is the generic statement that "Defendants are employed by the State of New Mexico . . . either as Governor, Cabinet heads or supervisory positions."  Complaint at 2.  Beyond this allegation, the

complaint is entirely silent as to why the Governor would be a proper defendant in this case. Under the Supreme Court's decision in *Iqbal v. Ashcroft*, the claims against the Governor therefore should be dismissed.

In *Iqbal*, the Supreme Court affirmed dismissal of a claim for violation of constitutional rights against the former Attorney General of the United States despite the fact that the plaintiff in that case had alleged that the Attorney General "'knew of, condoned, and willfully and maliciously agreed to subject [him]' to harsh conditions of confinement 'as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest.'" *Id.* at 1951.  The complaint at issue there also alleged that the Attorney General was the "principal architect" of the allegedly unconstitutional policy.  *Id.*  The Court found such allegations insufficient to state a claim, noting that "[t]hese bare assertions . . . amount[ed] to nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim," and were therefore not entitled to the "assumption of truth."  *Id.*  The Court further explained that where a plaintiff seeks to pursue a claim for a violation of his constitutional rights, an area "where masters do not answer for the torts of their servants -- the term 'supervisory liability' is a misnomer . . . . [E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 129 S. Ct. at 1949.  In addition, the Court emphasized the required intent to violate a plaintiff's constitutional rights, explaining that "purpose rather than knowledge is required" to impose liability on "an official charged with violations arising from his or her superintendent responsibilities." *Id.*

Because Garcia's complaint falls far short of even matching the specificity of the complaint the Court found deficient in *Iqbal*, dismissal of the constitutional claims against the Governor is appropriate.  Garcia does not, and could not, allege that the Governor had any

involvement whatsoever in the acts he claims caused his alleged loss, and it not plausible that the Governor involved himself with the handling of an individual inmate's property absent specific factual information that would support such an unusual circumstance.  And while the Supreme Court has stated that mere knowledge on the part of a supervisory official is an insufficient basis for liability, Garcia does not even allege that the Governor knew about the acts he contends caused Garcia to lose his property.  Given his silence regarding any knowledge on the Governor's part regarding the handling of that property, Garcia plainly has not come forward with factual information that would support a finding that the Governor intended to deprive him of any of his constitutional rights.

Any effort by Garcia to pursue a constitutional claim for money damages against the State of New Mexico directly likewise fail on their face.  It is well-established that a person seeking to recover damages for an alleged constitutional violation under 42 U.S.C. § 1983 must sue an individual state official in his personal capacity rather than demanding relief from the State directly.  *See, e.g., Stidham v. Peace Office Stds & Training*, 265 F.3d 1144, 1156 (10th Cir. 2001).  Here, Garcia only demands monetary relief in his complaint.  As such, any § 1983 claim he might be trying to pursue against the State directly must be dismissed.

      **B.**     **The Governor is entitled to qualified immunity from Garcia's constitutional claims.**

Qualified immunity shields government officials from claims where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  This protection applies "regardless of whether a government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."  *Id.* (internal quotations omitted).  Because it is an immunity from suit

rather than merely a defense to liability, issues of qualified immunity must be resolved at the earliest possible stage in litigation.  *Id.*

To overcome qualified immunity, Garcia must satisfy a "heavy two-part burden[.]" *Casey v. W. Las Vegas Indep. Sch. Dist.*, 473 F.3d 1323, 1327 (10th Cir. 2007) (internal quotations omitted).  First, he must demonstrate that the Defendants' actions violated a right protected by the due process clause of the Fourteenth Amendment.  *See id.*  Second, he must demonstrate that the law governing the alleged violation was clearly established at the time the alleged violation occurred.  *See id.*

Garcia cannot satisfy his burden under either prong of qualified immunity analysis because he has not alleged facts rising to the level of a constitutional violation, let alone the violation of a clearly established constitutional right.  As an initial matter, there is no basis for concluding the Governor had anything to do with the handling of Garcia's property.  Moreover, in the prison context, even an intentional deprivation of property is not a violation of due process if the prison provides a suitable post-deprivation remedy, such as an inmate grievance procedure. *See Hudson v. Palmer*, 468 U.S. 517, 532-33 (1984).  *See also Toussaint v. Good*, 276 Fed. Appx. 122 (3rd Cir. 2008) (unpublished).  Garcia has not alleged he followed such procedures and does not describe any facts that support his conclusory allegation that he otherwise exhausted his administrative remedies before filing suit.  *See* 42 U.S.C. § 1997e(a) (requiring exhaustion of administrative remedies before filing an action challenging prison conditions).  Further, if the prison officials here confiscated property that is contraband, Garcia would have no protected property interest to trigger due process protections.  *Steffey v. Orman*, 461 F.3d 1218, 1223 (10th Cir. 2006) ("Decisions from this and other circuits demonstrate that the seizure and forfeiture of currency as contraband is a typical incident of prison life, and is not a significant

property interest deprivation."); *Lyon v. Farrier*, 730 F.2d 525, 527 (8th Cir. 1984) ("Because the property was contraband, [the inmate] cannot seriously argue that he had a protected property interest in it.  Therefore, the destruction of the painting did not implicate any due process concerns.").

Garcia has not specified the nature of the property he claims was taken or lost, which would enable the Court to determine whether the property was contraband.  And, in any event, he fails to allege facts establishing a violation of a constitutional right by anyone, let alone the Governor, regarding his property.  Dismissal of the constitutional claims against the Governor therefore is appropriate on the basis of qualified immunity.

> **C.     The state tort claims against the Governor and the State of New Mexico should be dismissed because they do not fall within a waiver of immunity under the Tort Claims Act and are not supported by sufficient factual allegations to state a claim.**

Garcia's state tort claims (*e.g.,* breach of fiduciary duty and negligence) against the Governor and the State also should be dismissed under *Iqbal* because Garcia has not provided enough factual allegations to establish that those claims fall outside the scope of immunity under the New Mexico Tort Claims Act or are plausible on their face.

First, by enacting the New Mexico Tort Claims Act, the state legislature granted the Governor and the State broad immunity from tort liability.  *See* NMSA 1978, § 41-4-4.  None of the exceptions to this immunity the legislature enacted plausibly applies to any state tort claim Garcia might be trying to pursue here.  Accordingly, the Governor and the State are both immune from the Defendant's state law claims, and the Court should dismiss the claims against them for failure to state a claim upon which relief can be granted.

For example, Garcia mentions a breach of fiduciary duty claim in the title of the Complaint and in the prayer for relief, but there is no waiver of immunity for such a claim.  In

any event, Garcia does not include allegations that would support the existence of a fiduciary relationship running from the Governor to him, and the problems with such a theory are obvious. *See Beverly Hills Sav. v. Highfield Associates*, No. Civ. 87-250-M, 1987 U.S. Dist. LEXIS 14019, *10-11 (D.N.M. Aug. 28, 1987) (claim of breach of fiduciary duty dismissed where no fiduciary relationship existed); *Nelson v. Dawson*, No. Civ. 06-53-2-BLW, 2009 U.S. Dist. LEXIS 13794, 21-22 (D. Idaho Feb. 20, 2009) (no fiduciary duty as to inmate fund absent law imposing fiduciary relationship).

Similarly, Garcia alleges negligence, but the Complaint is so lacking in factual allegations that the reader is left wondering (1) what the Defendants are alleged to have done; (2) what a "reasonable person" would have done differently than what the Defendants are alleged to have done; and (3) whether this claim falls within an exception to immunity under the New Mexico Tort Claims Act.  All one is able to determine from the Complaint is that someone allegedly "deprived" Garcia of some property.  It is unclear who "deprived" him of property, what type of property he is referring to, or how the alleged deprivation occurred.  Because a negligence claim requires showing the breach of a duty to act as a reasonable person and that such a breach caused damages, the Complaint's conclusory statements are not sufficient under the *Twombly/Iqbal* standard and are not entitled to the presumption of truth.  *See Herrera v. Quality Pontiac*, 2003 NMSC 18, ¶ 6, 73 P.2d 181, 185-86, 134 N.M. 43, 47-48; *Iqbal*, 129 S. Ct. at 1951 (conclusory allegations, unsubstantiated by allegations of fact, are not entitled to presumption of truth).

The Complaint simply does not provide any information from which the Court can determine how the Governor of New Mexico possibly could have been personally responsible for depriving Garcia of property or even what kind of duty he owed Garcia. It likewise falls short

of articulating any actionable conduct by the State of New Mexico generally.  Because the Complaint leaves both counsel and the Court wondering how the elements of a state tort claim could be satisfied, dismissal under Rule 12(b)(6) is appropriate.

## II.     CONCLUSION

WHEREFORE, the State of New Mexico and Governor Bill Richardson respectfully move this Court for an order dismissing all of the claims against them in this case pursuant to Fed. R. Civ. P. 12(b)(6).

                                                     LONG, POUND & KOMER, P.A.
*Attorneys for Defendants*

*/s/ Little V. West, electronically submitted*
MARK T. BAKER
LITTLE V. WEST
2200 Brothers Road
P. O. Box 5098
Santa Fe, NM  87502-5098
505-982-8405
505-982-8513 (FAX)
lpk@nm.net

## CERTIFICATE OF SERVICE

  I HEREBY CERTIFY that on the 23rd day of November, 2009, I filed the foregoing **Motion to Dismiss under Rule 12 (b)(6) of the Federal Rules of Civil Procedure** electronically through the CM/ECF system, which caused the following counsel to be served by electronic means, as more fully reflected on the Notice of Electronic filing.

Peter A. Robertson,
Deputy General Counsel
peter.robertson@state.nm.us

  I FURTHER CERTIFY that I mailed a copy, first class mail, postage prepaid addressed as follows:

Alfred Valentino Garcia, *pro se*
Lea County Correction Facility
6900 W Miller Drive
Inmate No. 50725
Hobbs, NM  88244

                */s/ Little V. West, electronically submitted*
                LITTLE V. WEST